IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| David C. Poole, ) | Civil Action No.: 6:12-2943-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Transcontinental Fund Administration, Ltd., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant Transcontinental Fund Administration, Ltd.'s ("Defendant" or "TFA") Motion to Reconsider (ECF No. 83). On March 23, 2015, the Court issued an Order (ECF No. 78) denying Defendant's Renewed Motion to Dismiss (ECF No. 36), granting Plaintiff David C. Poole's ("Plaintiff") Motion for Leave to Amend Complaint (ECF No. 37), and denying Plaintiff's Motion to Strike Defendant's Sur-Reply Memorandum (ECF No. 50). Defendant now requests the Court reconsider its Order and grant the Renewed Motion to Dismiss, or in the alternative grant Defendant leave to file an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 83 at 1.) For the reasons set forth below, the Motion to Reconsider is denied.

## DISCUSSION

**I. Legal Standard**

The Order denying Defendant's Renewed Motion to Dismiss is an interlocutory order under Fed. R. Civ. P. 54(b). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (citation omitted). "This is because a district court retains the power to reconsider and modify its

interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Id.* at 514-15 (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.1991); *see also United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473-74 (M.D.N.C. 2003) ("A court may revisit interlocutory orders at any time prior to final judgment under Fed. R. Civ. P. 54(b) or its inherent authority.").

The Fourth Circuit Court of Appeals has not specifically articulated the standard for evaluating a motion for reconsideration filed under Rule 54(b). *Long v. O'Reilly's Auto. Stores, Inc.*, C/A No. 6:12-901-MGL, 2014 WL 2864589, at *2 (D.S.C. June 23, 2014). Although the strict standards applicable to motions for reconsideration brought pursuant to Fed. R. Civ. P. 59 do not apply, "District courts in the Fourth Circuit look to the standards of motions under [Rule 59] for guidance." *Id.* (citing *R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co.*, C/A No. 4:02–4184–RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C.2005)); *see also Pure Fishing, Inc. v. Normark Corp.*, C/A No. 3:10-2140-CMC, 2012 WL 4009628, at *1 (D.S.C. Sept. 12, 2012) *aff'd,* 564 F. App'x 601 (Fed. Cir. 2014) ("This court finds the standard applicable to reconsideration of final orders useful, though non-binding."). As with a motion under Rule 59, "appropriate reasons for granting reconsideration under Rule 54 are: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Long*, 2014 WL 2864589 at * 2. "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515.

**II. Analysis**

    **A. The Court's Finding That Specific Jurisdiction Lies and the Permissibility of Amendment**

Defendant asserts that the Court impermissibly relied upon Plaintiff's Amended Complaint in finding that specific personal jurisdiction lies. Defendant advances two arguments in support of this assertion. First, Defendant avers that the Court based its personal jurisdiction ruling on the "alleged pre-investment activities" of TFA, specifically Defendant's participation in the development of the Private Offering Circular and communication with fund manager, James R. McGee ("McGee"), prior to the establishment of the Congaree Offshore Capital, Ltd. fund ("Offshore Fund") and Plaintiff's investment therein. (ECF No. 83-1 at 3.) These alleged actions, Defendant argues, underlie Plaintiff's Securities Act claim, which was introduced in the Amended Complaint, *and not* any of the original causes of action (Breach of Fiduciary Duty; Breach of Contract; Breach of Contract with Fraudulent Intent). (*Id.*) Second, Defendant asserts that amendment is improper under the circumstances because it would be filed after the applicable three year statute of limitations. (*Id.* at 4.) Specifically, Defendant argues that Plaintiff's Securities Act claim cannot "relate back" to the original complaint's filing date because it differs in both time and type than Plaintiff's original causes of action and thus lacks the common core of operative facts necessary for relation back under Fed. R. Civ. P. 15(c)(1)(B). (*Id.* at 4-5.)

Plaintiff responds first that the jurisdictional discovery conducted in this case revealed the extent of Defendant's business interactions with the state of South Carolina, and it was those business interactions upon which the Court relied in finding specific personal jurisdiction. (ECF No. 88 at 2.) While it is true, he argues, that those business

interactions eventually led to the sale of securities (and thus underlie the Securities Act claim in the Amended Complaint), it is not *what* was sold but the *extent* of Defendant's interactions in support of the sales effort that determined the existence of personal jurisdiction over Defendant. (*Id.*) With respect to the timeliness of the Securities Act claim, Plaintiff responds that the history of involvement between TFA, McGee, and himself shows that the Securities Act claim arose out of the same conduct, transaction, or occurrence set out in the original pleadings. (*Id.* at 3.) Plaintiff notes that the Court specifically identified the existence of putative legal infirmities with the Securities Act claim in its Order and indicated that the Court would wait to consider legal arguments against the amendments until after discovery has been conducted. (*Id.* at 2-3; *see* ECF No. 78 at 19.) Moreover, Plaintiff asserts that Defendant has relied on the wrong statute of limitations to support its argument that the Securities Act claim is time barred, and that application of the correct statute of limitations renders the Securities Act claim timely, thus eliminating the need to apply rules about relation back. (ECF No. 88 at 3-4.)

The Court agrees with Plaintiff that it was the *extent* of Defendant's business interactions with the state of South Carolina that led to a finding that specific personal jurisdiction lies. The Court did not impermissibly rely upon the Amended Complaint when making its ruling. Rather, the Court relied upon the results of the limited discovery conducted specifically for the purpose of determining whether personal jurisdiction was present and the parties' briefing regarding that jurisdictional discovery. The Court need not rehash here its analysis of Defendant's purposeful and directed availment of the privilege of conducting business in South Carolina. Suffice to say, Defendant has made no showing of an intervening change in controlling law or the presence of new evidence that changes

that analysis. *See Long*, 2014 WL 2864589 at *2. Nor has Defendant persuaded the Court that its ruling on the personal jurisdiction question was a clear error of law or that a manifest injustice will result from that ruling. *See id.* Mindful of its ultimate responsibility to reach the correct judgment under law, *see Am. Canoe Ass'n*, 326 F.3d at 515, the Court's position on the personal jurisdiction issue is unchanged and the Motion to Reconsider on these grounds is denied.

Regarding the timeliness of the Securities Act claim, the Court's position is likewise unchanged. Defendant will, no doubt, assert its statute of limitations arguments again at summary judgment. At risk of being repetitive, the Court has given the purported futility of the Securities Act claim the consideration it deserves at this stage, and will wait to consider legal arguments (including timeliness arguments) against the claim until after discovery has occurred. To the extent the Motion to Reconsider was based on these grounds, it is denied.

### B. The Forum Selection Clause

Defendant next asserts that the Court dispatched with the forum selection clause in the Subscription Agreement on improper grounds without substantive treatment. (ECF No. 83-1 at 5.) According to Defendant, the Court cited the applicable law appropriate for determining whether to enforce a forum selection clause, but did not apply that law correctly. (*Id.*) Defendant further argues that the Court resolved the forum selection question on an improper basis, namely, the fact that this case has been pending in South Carolina for more than three years, and that the action's long life has resulted from circumstances out of TFA's control. (*Id.*)

The Court is unconvinced that it applied the law regarding enforcement of a forum selection clause incorrectly. Rather than showing an intervening change in controlling law,

new evidence that changes the forum selection clause analysis, a clear error of law on the part of the Court, or the specter of manifest injustice, *see Long*, 2014 WL 2864589 at * 2, Defendant's arguments for reconsideration amount to simple disagreement with the result reached in the Order. The Court would first point out that TFA is not a signatory to the Subscription Agreement that contains the forum selection clause it seeks to enforce. While this is not a complete bar to TFA's invocation of that clause, TFA's necessary reliance on the "intertwined claims" test, based on equitable principles, (*see* Renewed Motion to Dismiss 25, ECF No. 36), weakens its position on its desired enforcement of the clause. Weakening that position still further is the fact that the Subscription Agreement was the vehicle by which McGee sold securities to Plaintiff, and thus the vehicle by which the underlying alleged securities fraud on the part of McGee was achieved. For TFA, a non-signatory, to seek equitable enforcement of a forum selection clause in a document that Plaintiff alleges was used to commit securities fraud is a tenuous position at best. One final factor worth noting is Mr. Poole's business sophistication level relative to the other parties in the underlying securities transaction. Both Defendant, in its Renewed Motion to Dismiss, and the Court, in its Order, cited *Atl. Floor Servs., Inc. v. Wal-Mart Stores, Inc.*, 334 F. Supp. 2d 875 (D.S.C. 2004) for the precept that, "A forum selection clause is *prima facie* valid and enforceable when made in arms-length transactions *by sophisticated business entities* absent some compelling and countervailing reason." *Id.* at 877 (emphasis added) (citing *Sterling Forest Assoc. v. Barnett–Range Corp.*, 840 F.2d 249, 251 (4th Cir. 1998), *rev'd on other grounds*). But there is no evidence that Mr. Poole is a "sophisticated business entity." Rather, he is an individual investor who is claiming to be the victim of securities fraud. This factor puts TFA's attempted invocation of the forum selection clause

on even shakier ground, and lends weight toward a finding that enforcement of the clause would be "'unreasonable' under the circumstances." *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)*.* In the Order, the Court explained that forum selection clauses may be considered unreasonable if, *inter alia*, the party challenging enforcement of the clause "'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum." *Atl. Floor Servs.*, 334 F. Supp. 2d at 877 *(*citing *M/S Bremen*, 407 U.S. at 18). The Court's view of the grave inconvenience and unfairness that will result to Plaintiff if he is required to gather up his actions and begin anew in the Cayman Islands is unchanged, and the Motion to Reconsider on grounds that the forum selection clause issue was wrongly decided is denied.

### C. The Choice of Law Provision

Defendant next contends that the Court failed to address its argument to dismiss Plaintiff's breach of contract claims based upon the choice-of-law of law provision in the Fund Administration Agreement. (*Id.* at 7.) Defendant argues that pursuant to the terms of the Financial Administration Agreement, the applicable law in this case is that of the Cayman Islands, not South Carolina, and that regardless of the forum, Cayman law forbids maintenance of Plaintiff's breach of contract claims. (*Id.* at 7-8.)

Plaintiff responds that the Court's discussion of the forum selection clause applies equally to the choice-of-law provision and highlights the public policy reasons why neither clause should be enforced in this circumstance. (ECF No. 88 at 4.) He observes that Defendant has an obvious preference to litigate in a venue where breach of contract claims by third party beneficiaries are not recognized as a matter of law, but states that the permissibility of such claims is a basic tenet of South Carolina common law. (*Id.*)

Additionally, Plaintiff argues that the Securities Act claim added in the Amended Complaint arises from a state statutory framework that specifically disallows choice-of-law provisions that operate in a manner to cause a person purchasing or selling a security, or receiving investment advice regarding securities, to waive compliance with the Act. (*Id.* (citing S.C. Code Ann § 35-1-509 (1).) Finally, Plaintiff highlights the fact that the Court was careful to specify that all of Defendants arguments may be renewed after discovery is complete.

Defendant replies that the Securities Act and Plaintiff's claim thereunder have nothing to do with the forum selection clause, and the forum selection clause, likewise, has nothing to do with the choice-of-law provision. (ECF No. 89 at 6.) The Subscription Agreement's forum selection clause and the Fund Administration Agreement's choice-of-law provision, Defendant argues, are completely separate provisions to which distinct law applies and whose enforcement results in different outcomes. (*Id.* at 5.) Defendant states that the Administration Agreement's choice-of-law provision, purportedly mandating the application of Cayman law, applies only to Plaintiff's two breach of contract claims. (*Id.* at 6.) With this much, the Court agrees. Nevertheless, the Motion to Reconsider on grounds that the choice-of-law clause requires dismissal of the those claims is denied.

Defendant's theory for dismissal of Plaintiff's breach of contract claims is that Cayman Law does not allow a party lacking privity to bring a contract claim against a party to an agreement based upon the latter's alleged breach. (*See* ECF No. 36 at 27; 83-1 at 8; 89 at 6.) Defendant asserts, in other words, that Plaintiff has failed to state plausible claims for relief for breach of contract and breach of contract with fraudulent intent, because Plaintiff lacks the necessary privity. In the Order, the Court expressed its belief that Plaintiff had indeed stated plausible claims for relief, and indicated that Defendant may

renew its legal arguments against the challenged claims at summary judgment. (ECF No. 78 at 18.) The Court's position on this issue is unchanged, and Defendant has not shown an intervening change in controlling law, new evidence, or clear error on the Court's part to convince the Court otherwise. *See Long*, 2014 WL 2864589 at * 2.

Defendant relies on the Affidavit of J. Andrew Murray, its expert on the laws of the Cayman Islands, for the proposition that third-party beneficiary doctrine is not recognized in Cayman Law. (*See* Murray Aff. 3-6, ECF No. 6-6; *see also* ECF No. 36-1 at 27.) In his affidavit, Mr. Murray indicates that the English Common law forms part of the laws of the Cayman Islands and the decisions of the English Courts in interpreting the common law of England constitutes persuasive interpretative authority of the common laws of the Cayman Islands. (Murray Aff. 2, ECF No. 6-6.) He further states that the doctrine of privity of contract "forms part of the laws of the Cayman Islands, is well established and has rarely been doubted." (*Id.* at 3.) Moreover, Mr. Murray acknowledges, "English common law, and therefore the laws of the Cayman Islands, have accepted a number of apparent exceptions to the doctrine of privity, one of which is that facts which constitute a breach of the contract between two parties may also give rise to a claim in tort by a non-party, and, in such a case, the non-party may indirectly enforce that contract." (*Id.* at 4.) According to Mr. Murray, "A breach of contract by a party may amount to breach of a duty of care owed to a non-party because the contract has given rise to a relationship under which such a duty is owed." (*Id.*) Mr. Murray then describes two tests Cayman courts would apply when seeking to determine whether a duty of care may be owed by a party to a nonparty: 1. whether the party "assumed responsibility" for its conduct toward the non-party, and 2. a three prong test asking whether - a. loss to the non-party was reasonably foreseeable, b. the

relationship between the parties was sufficiently proximate, and c. under the all the circumstances it is fair, just, and reasonable to impose a duty of care. (*Id.* at 4-5 (citing *Customs and Excise Comrs v. Barclays Bank plc* [2006] UKHL 28. [2007] 1 AC 181, [2006] 4 All ER 256).) In the end, Mr. Murray notes that "neither test is determinative in and of itself and what really matters are the circumstances of the case and relationship between the parties in the context of their legal and factual situation."[1] (*Id.* at 5.)

Next, Mr. Murray explains his view that the privity requirement precludes Plaintiff's breach of contract claims in the instant action. He states, "Despite these apparent exceptions to the doctrine of privity of contract, it is clear that the doctrine survives and continues to form part of the laws of the Cayman Islands." (*Id.* at 5.) And further, "The tests referred to in *Customs and Excise Comrs v. Barclays Bank plc* are clearly to be applied in the context of the alleged existence of a duty of care in tort, in an action by a claimant alleging pure economic loss." (*Id.*) In support of this assertion, Mr. Murray cites, without any explication, a decision from the English Court of Appeal (*HSBC Bank plc v. So* [2009] EWCA Civ 296), that purportedly limits application of the previously described tests to the context of tort. (*Id.* at 5-6.) He further includes a block quote from a Grand Court of the Cayman Islands case (*In Re Omni Securities Limited No. 3* 1998 CILR 275), that would seem to indicate the Chief Justice's view, at the time, that liability for economic losses due

---

[1] In a footnote to its Motion to Reconsider, TFA argues that the Court did not address its "substantive argument to dismiss Poole's Breach of Fiduciary Duty claim based upon the legal argument that no fiduciary relationship exists between the two parties and therefore the claim cannot stand." (Mot. to Reconsider 8 n.4, ECF No. 83-1.) The Court would point Defendant to the foregoing tests, described by its own expert, Mr. Murray, as a potential source of a breach of a duty of care owed by TFA to Mr. Poole because of the nature of their relationship, which arose from TFA's contract with the Offshore Fund. The Court finds that Plaintiff's breach of fiduciary duty theory states a plausible claim for relief and declines to dismiss that count of the Amended Complaint.

to negligent misstatements made by a party to a non-party could only sound in tort, and not in contract, due to the lack of privity. (*Id.* at 6.) There is no explanation of the facts of that case, no explanation of the context of the Chief Justice's writing,[2] no explanation of whether third-party beneficiary doctrine was or even could have been raised in the scenario specific to that case, and no indication of whether the purported unavailability of third-party beneficiary doctrine is a commonly understood principle in Cayman law or simply a conclusion this Court might draw from sources that give such an indication but do not so state explicitly. Instead, after acknowledging "apparent exceptions to the doctrine of privity of contract," Mr. Murray sets forth "[his] view" that Plaintiff is precluded from bringing any claim based on alleged breach of the Administration Agreement.

Mr. Murray may indeed be right that Cayman law forbids Plaintiff's invocation of third-party beneficiary doctrine, but the Court is not sufficiently convinced of that proposition at the current stage of this litigation to dismiss Plaintiff's contract claims for failure to state plausible claims for relief.

First, the Court has a limited obligation, and indeed limited resources, to research foreign law. As the Eleventh Circuit Court of Appeals has noted regarding the potential applicability of Cayman law, "[A] district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so. 'Although the court is permitted to take judicial notice of authoritative statements of foreign law, nothing requires the court to conduct its own research into obscure sources.'" *Mut. Serv.*

---

[2] The Chief Justice uses the phrase "*In my view* . . ." (*see* Murray Aff. ¶ 10, ECF No. 6-6 (quoting (*In Re Omni Securities Limited No. 3* 1998 CILR 275)), to qualify the above statement, and without any further information about the case or his opinion the Court can hardly afford it dispositive weight.

-11-

*Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1320-22 (11th Cir. 2004) (quoting *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1424 n.10 (9th Cir. 1989). Thus, "where either no information, or else *insufficient information*, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice." Restatement (Second) of Conflict of Laws, § 136, cmt. h, at 378-79 (1971) (emphasis added). Here, Defendant has submitted *some* evidence of the content of Cayman law with respect to a potential bar on third-party beneficiary claims. However, the Court does not have sufficient information about the content of that law to definitively rule that Plaintiff has failed to state a plausible claim for relief under breach of contract theory. The issue is anything but clear on the bare assertions in Mr. Murray's affidavit. In the absence of sufficient information, the Court finds that Plaintiff has met this minimal pleading bar, and, yet again, invites Defendant to raise its legal arguments regarding the choice-of-law issue at summary judgment.

Second and relatedly, where the Court is not sufficiently convinced by the current evidence of and briefing on foreign law, it is appropriate to defer final resolution on the choice-of-law issue until later stages of the case. *See, e.g.*, *Howard v. Kerzner Intern. Ltd.*, 12-22184-CIV, 2014 WL 714787, at *4 (S.D. Fla. Feb. 24, 2014) ("The burden is on Defendants as the moving party to establish the existence of a conflict here, and at this, the motion to dismiss stage, Defendants have established that a conflict of law exists regarding strict liability between the relevant sovereigns but have not demonstrated the specifics of the relevant Bahamian law. This Court awaits further briefing as to the issue of applicable law of The Bahamas at later stages in this proceeding."); *see also Krys v. Aaron*, 106 F.

Supp. 3d 472, 481 (D.N.J. 2015) ("[L]aw of the case doctrine specifically does not prevent a court from granting summary judgment where a court previously denied a motion to dismiss using the more liberal standards governing Rule 12 motions. That rule proves particularly analogous in this instance, because the factual inquiry necessary for a choice-of-law analysis often proves inappropriate or impossible at the motion to dismiss stage when little or no discovery has taken place." (internal citations and quotation marks omitted)); *Canada Pipeline Accessories, Co. v. Canalta Controls, Ltd.*, No. CIV.A. 3:12-8448, 2013 WL 3233464, at *8 (S.D.W. Va. June 25, 2013) ("As courts in this circuit and others have recognized, a choice-of-law analysis at the motion-to-dismiss stage is often premature."); *Banner Life Ins. Co. v. Bonney*, No. 2:11CV198, 2011 WL 5027498, at *8 (E.D. Va. Oct. 21, 2011) ("Conducting a choice of law analysis is fact-intensive and context specific. Due to the complexity of this analysis when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings." (internal citations and quotation marks omitted)); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 700-01 (D.N.J. 2011) (collecting cases that have found a choice-of-law analysis premature on a motion to dismiss).

The Court is aware that Defendant will likely take the position that the choice-of-law issue in this case can be resolved as a purely legal matter due to the existence of the choice-of-law provision in the Administration Agreement. However, if it becomes apparent that Plaintiff's breach of contract claims are definitively precluded by the absence of third-party beneficiary doctrine in Cayman law, then the Court will conduct a more thorough analysis of whether the choice-of-law provision should be enforced as a matter of public

policy under South Carolina law. It is notable that the choice of Cayman law was not part of Mr. Poole's bargain with the Offshore Fund. Rather, it was part of the Offshore Fund's subsequent bargain with TFA, of which Mr. Poole was not part and the specifics of which he may well have had no knowledge. In any event, the Court will need a complete picture of the surrounding facts to conduct this analysis if and when it becomes appropriate.

Third, the Court has discretion to reject the testimony of a "foreign law expert." As a general matter:

> The purpose of an expert witness in foreign law is to aid the court in determining the content of the applicable foreign law, not to apply the law to the facts of the case. It is not surprising, therefore, that federal courts have not felt bound by the testimony of foreign law experts and upon occasion have placed little or no credence in their opinions when not supported adequately or when the views were offered in too partisan a fashion. Nonetheless, district judges expect adequate expert testimony on foreign law and the failure to produce it may be quite damaging to a litigant's case.

§ 2444 Proof of Foreign Law, 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed.). The Court is not rejecting Mr. Murray's testimony at this time. Rather, the Court is exercising its proper discretion to gather more definitive proof of Cayman law before ruling on the matter conclusively at a later stage.

Fourth and finally, discovery is available to challenge conclusions about foreign law. Thus, even if the Court determines that Cayman law applies, Plaintiff should arguably have an opportunity to depose Defendant's expert and examine his theories. General principles regarding proof of foreign law support this notion:

> Discovery is available to the parties in preparing themselves on issues of foreign law. Oral and written examinations, interrogatories to parties, and requests for admission often are used to refine and sharpen disputed issues, to record expert testimony on foreign law, to determine the position taken by the opposing party's expert, and to gather information and foreign legal materials.

*Id.* Plaintiff did not have an expert in Cayman law during briefing on the motion to dismiss. (ECF No. 11 at 31.) In the Court's view, Plaintiff should at least have an opportunity to flesh out and challenge Mr. Murray's conclusions regarding preclusion of his breach of contract claims before they are dismissed for failure to state a claim.

For all of the foregoing reasons, Defendant's Motion to Reconsider on grounds that the choice-of-law provision was not appropriately considered by the Court, and that the provision mandates immediate dismissal of the contract claims, is hereby denied.

### D. Request for Certification of an Interlocutory Appeal

In the event of an unfavorable ruling on its Motion to Reconsider, Defendant requested that the Court grant leave to allow immediate appeal of the Order (ECF No. 78). Defendant avers that the issues raised in the Renewed Motion to Dismiss and the Motion to Reconsider involve questions of law as to which there are substantial grounds for difference of opinion and that immediate appeal of the Order may materially advance the ultimate termination of the litigation pursuant to 28 U.S.C. § 1292(b). This request is denied. The Court has already considered extensive briefing and ruled upon the issues that Defendant now seeks to appeal to the Fourth Circuit as an interlocutory matter. There is no reason to delay this case further merely because Defendant disagrees with the Court's rulings.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Reconsider (ECF No. 83) is DENIED.

IT IS SO ORDERED.

<u>/s/ Bruce Howe Hendricks</u>
United States District Judge

January 25, 2016
Greenville, South Carolina